**CITY OF DALLAS, Appellant,**

v.

**Stephen MOREAU, Appellee.**

**No. 05–84–01314–CV.**

Court of Appeals of Texas, Dallas.

Sept. 10, 1985.

Analeslie Muncy, City Atty., Carroll R. Graham, Donna M. Atwood, Asst. City Attys., Dallas, for appellant.

Bruce A. Pauley, Lyon & Lyon, Dallas, for appellee.

Before AKIN, GUILLOT and HOWELL, JJ.

HOWELL, Justice.

The City of Dallas appeals from a temporary injunction directing the City to permit Stephen Moreau to resume working as a bailiff for the Municipal Courts of the City of Dallas pending trial of claims by Moreau that the City discharged him from his position as a bailiff in violation of the Whistle Blower Act, TEX.REV.CIV.STAT.ANN. art. 6252–16a (Vernon Supp.1985). The City complains that the trial court abused its discretion in granting the injunction because there is no evidence that (1) Moreau will suffer irreparable injury; (2) Moreau has no adequate remedy at law; (3) the City has violated or threatens to continue to violate Article 6252–16a; or (4) Moreau has a probable right to recover on the merits. Finding no evidence that the statute has been violated and no showing of a probable right of recovery, we reverse the judgment of the trial court and dissolve the temporary injunction.

Moreau was serving as a bailiff with the Municipal Courts of Dallas when the Honorable Joan Winn began her appointment as Administrative Judge of those courts on January 1, 1984. Moreau came into controversy with Judge Winn on the procedure for stamping the Judge's signature on post appearance day arrest warrants. At that time, the procedure was for the bailiffs to review the warrants for "clerical errors or omissions" and then to affix a facsimile stamp of the Administrative Judge's signature to them. Moreau refused to stamp the warrants, claiming the procedure was illegal inasmuch as the warrants were stamped without judicial review for probable cause. The chief bailiff on at least two occasions, and Judge Winn on one occasion, had conversations with Moreau regarding his refusal to stamp warrants. On June 1, 1984, the chief bailiff again approached Moreau for the stated purpose of discussing the stamping of warrants. Moreau responded that there was no need to discuss the warrant stamping, that the process was illegal, and that he was not going to stamp warrants. Thereafter, on that same day,

Moreau received a termination notice signed by Judge Winn, stating that he was discharged for insubordination in refusing to follow orders to stamp warrants.

◼ In reviewing the ruling of a trial court on a temporary injunction, the test is whether the trial court abused its discretion. *Texas Foundries v. International Moulders & Foundry Workers' Union,* 151 Tex. 239, 248 S.W.2d 460 (1952). In *Texas Foundries* the supreme court there announced the following test for abuse of discretion: "If the petition does allege a cause of action and evidence tending to sustain such cause of action is introduced, then there is no abuse of discretion by the trial court in issuing the temporary injunction." 248 S.W.2d at 462.

The pertinent parts of article 6252–16a read:

Section 1. In this Act:

(1) "Law" means a state or federal statute, an ordinance passed by a local governmental body, or a rule adopted under a statute or an ordinance.

. . . .

Sec. 2 A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith.

. . . .

Sec. 3(b) A public employee who sues under this section has the burden of proof, but it is a rebuttable presumption that the employee was suspended or terminated for reporting a violation of law if the employee is suspended or terminated not later than the 90th day after making a report in good faith.

While the statute is inspecific and we have no prior decisions to guide us, we think that it is the burden of a plaintiff under this statute to identify the particular act of discrimination and the persons, either individually or as a group, who engaged in or procured the same. Moreau's only significant claim of discrimination is that he was terminated from his employment. The ter-

mination notice was in writing and signed by Judge Winn. While Moreau had discussions with the chief bailiff immediately prior to his discharge, we find no contention that the chief bailiff procured his discharge. It follows that, in order to prevail at a temporary injunction hearing, Moreau, had the burden to produce some evidence that Judge Winn terminated his employment because he reported "a violation of law to an appropriate law enforcement authority."

◼ The term "law enforcement authority" is. most commonly applied to those who have the power and the duty to arrest for violations of the criminal law—peace officers. If the term "an appropriate law enforcement authority" means *only* peace officers, it would necessarily follow that the preceding term, "a violation of law," refers *only* to violations of the criminal law. However, the definition contained in the statute is much broader than the criminal law. Plainly, it refers to all types of unlawful conduct. Conversely, we must conclude that the term "an appropriate law enforcement authority" is not limited to peace officers.

◼ However, it is to be emphasized that the word *appropriate* is a part of the statutory term. We conclude that, in the order to prevail at the temporary injunction hearing, Moreau was required to produce evidence that the law enforcement authority to whom he reported the alleged violation of law was an *appropriate* authority. We hold that, in order to be "appropriate," the authority to whom the report is given must have the power and the duty under the law to decide disputes concerning the lawfulness of the matter being reported, the power and the duty to order a halt or a change in the matter reported, the power to legislate or regulate with respect thereto, or the power to arrest, prosecute or otherwise discipline on account of an alleged violation being reported.

◼ Reduced to its essentials, Moreau's complaint is that Judge Winn committed "a violation of law" by ordering him to pro-

cess warrants in a manner contrary to the Texas Code of Criminal Procedure. We find no allegation that Judge Winn violated the Texas Penal Code; hence, no criminal misconduct.[1] We therefore conclude that it was not necessary for him to make his report to a peace officer.

Our next inquiry focuses on who or what would be "an appropriate law enforcement authority" to whom one might make a report that a judge has ordained a practice contrary to the provisions of the Code of Criminal Procedure. We need not provide a comprehensive answer to this question and confine our ruling to the facts of this case.

According to his testimony, Moreau spoke to many persons concerning the disputed practice. Whether these discussions can properly be described as "reports" of "a violation of law" will not be decided. Moreau testified to conversations with other judges of the Municipal Courts, a criminal district judge, members of the city attorney's staff, successive chief bailiffs and numerous of his fellow bailiffs. We hold that none of this group was an *appropriate* authority. None of them had any supervisory powers over Judge Winn; none of them had the authority or the responsibility to order that Judge Winn alter or modify her conduct; and none of them had the authority to discipline Judge Winn for misconduct. Moreau's claim for a temporary injunction, insofar as it is based upon a report to any of these persons, must fail.

Our ruling comports with the background of public concern, as we understand it, against which the Whistle Blower Act was adopted. Within recent years, there have been several highly publicized instances from around the nation wherein public employees have allegedly sustained adverse personnel consequences because of

testimony given to legislative bodies and regulatory boards with respect to questionable practices in their area of employment. We think that this statute was enacted to encourage such type of reporting and to protect those who do so. We are not aware of any legislative intent to protect miscellaneous complaints and discussions with fellow workers.[2] Neither do we perceive any great good to be achieved by fostering such conduct. Complaints to those who have neither the power nor the responsibility to change the practice being reported contributes little besides disharmony.

In addition to the above persons, Moreau placed a telephone call to the State Commission on Judicial Conduct on June 1, 1984, at "approximately 3:00 p.m. in the afternoon."[3] Judge Winn's letter of discharge is dated the same day. Moreau failed to testify whether he received his termination notice before or after his phone call, but, if it is his claim that he was fired in retaliation for reporting Judge Winn's actions to the Commission on Judicial Conduct, the injunction must fail. There is no showing that Judge Winn knew that this report had been made and no showing that Judge Winn had any reason to anticipate that this report would be made. This critical gap in his proof could have been cured by the statutory presumption in favor of a discharged worker if, and only if, he was discharged *after* making the report. Considering that the report was made rather late in the business day, that it took a significant amount of time to dictate the letter, type it and sign it, and that, according to Moreau's testimony, the letter from Judge Winn was delivered to him that very day, we find it extremely unlikely that his report could have preceded the notice of termination.

1. We further decline to decide if the disputed practice was in anywise unlawful. We expressly limit ourselves to the holding that even if the practice were unlawful, Moreau failed to show himself entitled to a temporary injunction.

2. Moreau also testified that he had a discussion with a criminal district judge. However, it is settled that the district courts have no general

supervisory jurisdiction over the justice courts; they would have no greater power to supervise municipal courts.

3. Again, we decline to pass upon the question of whether a single telephone call is sufficient to invoke the statute.

The statute provides the aggrieved employee with a presumption of retaliation if he is suspended or terminated "not later than the 90th day after making a report. . . ." However, it is an express provision that the burden of proof on the whole case is on the employee. It is likewise clear that he is not entitled to the benefit of the presumption unless discharged "*after* making a report" (emphasis added). Having failed to present evidence that the discharge occurred *after* the making of the report to the commission, Moreau has failed to invoke the presumption. Lacking the benefit of the presumption, Moreau has failed to carry his burden to show that he was discharged in retaliation for making a report to the Commission on Judicial Conduct.

Our decision is, of course, without prejudice to the evidence that may be introduced at the trial on the merits. We hold that at the temporary injunction hearing, Moreau failed to produce sufficient evidence to support a finding that he was terminated for reporting a violation of law to an appropriate law enforcement authority. The trial court abused its discretion in granting the temporary injunction and the injunction is dissolved.