

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00320-CR
### NO. 02-14-00321-CR
### NO. 02-14-00322-CR
### NO. 02-14-00323-CR

ERIK WHITE                                                    APPELLANT

V.

THE STATE OF TEXAS                                           STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NOS. 1316391D, 1330277D, 1330414D, 1331423D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Erik White appeals his convictions for two counts of burglary and two counts of aggravated robbery. In two points, he contends that his trial counsel was ineffective for failing to request a severance of his trial from his codefendant's trial and for failing to further inquire about the trial judge's

---

[1]*See* Tex. R. App. P. 47.4.

relationship with a complaining witness after the judge disclosed the relationship. We affirm.

**Background Facts**

One afternoon in June 2013, appellant entered a retired woman's home in Fort Worth and pointed a gun at her.[2] After putting his gun away, he took a laptop and camera from the kitchen area of the home. Appellant, who appeared to be nervous, asked the woman for jewelry, and she went with him to a bedroom that contained some costume jewelry. She asked appellant to not hurt her, and he said that he would not. Appellant walked out of the house with the laptop and camera, and the woman locked the door behind him.

Two days later, appellant and two other men, who were all wearing gloves and masks, went to the house of another elderly woman. The men confronted the woman in her garage, knocked her down, dragged her into her house, taped her legs together, and told her to "shut up." After the police received a dispatch and arrived at the woman's residence, her neighbor said that he had seen a male enter her home. An officer approached the garage of the house and heard glass breaking; he informed other officers of a possible burglary in progress. Another neighbor alerted the officer that she had seen two men running through a field

---

[2]James Burns, one of appellant's acquaintances, drove him to and from the home and monitored the woman's husband, who was working in the front yard.

2

near the house. After a lengthy chase, the officer apprehended and detained appellant.

Another officer entered the house and found the woman lying face down on the floor; she was upset and had blood in her hair and duct tape wrapped around her legs. The police discovered that all of the bedrooms in the house had been rummaged through; the burglars had pulled items out of shelves and closets, had moved electronic devices, had opened dresser drawers, and had scattered "little boxes of stuff" in the house.

Stemming from these incidents, in separate cases, appellant was indicted for two counts of burglary and two counts of aggravated robbery. With respect to all of these charges, appellant retained counsel, waived constitutional and statutory rights, judicially confessed, and entered open guilty pleas. The trial court ordered the preparation of a presentence investigation report and set a date for a punishment hearing. In one punishment hearing, the trial court considered appellant's punishment along with the punishment of a codefendant, Dvonte Chadwick.

Chadwick testified that he had been involved in the second incident but denied that he had ever touched the victim. He said that the victim had received her injury when her head hit the corner of a wall. Appellant testified that he had "learned from the wrong[s] that [he had] done," but he said that he did not remember any details of the second offense, including who had dragged the victim into her house, because he had been under the influence of drugs that

day.  Regarding the second offense, he testified that he was not the "main party" committing the crime.  Appellant testified that he had used a BB gun during the first incident (while wanting the victim to believe that the gun was real) and that he had stolen only a laptop and a camera that day.  He also acknowledged that he had been involved in numerous other burglaries and thefts.  Appellant asked the trial court to place him on probation.

After hearing the parties' evidence (including testimony from appellant's mother and uncle) and arguments, the trial court found appellant guilty of all four offenses and sentenced him to twenty years' confinement on the burglary charges and confinement for life on the aggravated robbery charges, with the sentences running concurrently.[3]  Appellant brought these appeals.

**Alleged Ineffective Assistance**

In his two points, appellant contends that his trial counsel provided ineffective assistance.  The Sixth Amendment guarantees the right to reasonably effective assistance of counsel for defendants in criminal prosecutions.  *See* U.S. Const. amend. VI; *Ex parte Bryant*, 448 S.W.3d 29, 39 (Tex. Crim. App. 2014).  To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense.  *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d

---

[3]The court convicted Chadwick of aggravated robbery and sentenced him to thirty years' confinement.

4

289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14. In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not

5

given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

In his first point, appellant contends that his trial counsel was ineffective because he failed to request a severance of appellant's punishment trial from Chadwick's punishment trial. Before the trial court began receiving testimony at the punishment hearing, Chadwick's attorney and the trial court had the following colloquy:

> [CHADWICK'S COUNSEL]: [A]s many years as I've been doing this, I have not proceeded in this manner. Why are we having this kind of a joint hearing?
>
> THE COURT: It's my understanding that because we have . . . an overlap in testimony and because the Court is hearing this, the Court will be considering the testimony that is [duplicative] as to each Defendant, as to that person and their involvement, and then will be considering separately the testimony that has to do with either one Defendant or the other separately, because we have witnesses who are common to both cases, in the interest of judicial efficiency.
>
> [CHADWICK'S COUNSEL]: Okay. . . .
>
> . . . .
>
> THE COURT: Is that satisfactory to the Defense?
>
> [CHADWICK'S COUNSEL]: That is.

Similarly, later in the hearing, when the State offered an exhibit relating to DNA evidence for admission,[4] the following exchange occurred:

---

[4]The State later withdrew the offer.

[CHADWICK'S COUNSEL]: [T]hat's kind of why I didn't want a joint hearing in here, and I'll make that quite clear later on. There's some quite different things about what my client did or didn't do and what [appellant] did or didn't do. I'm not here to comment on what he did or didn't do, but, anyway, thank you.

THE COURT: And nobody's forcing anyone to participate in the joint hearing. I didn't hear any objection, and that's the way that we have proceeded. Do you have an objection?

[CHADWICK'S COUNSEL]: No, I want to continue on, and I think we can proceed and handle this in a fair fashion.

Appellant's counsel never objected or expressed disagreement with the joint hearing.

On appeal, appellant recognizes that a trial court has discretion to conduct a joint trial of codefendants when their alleged crimes arise out of the same transaction. *See* Tex. Code Crim. Proc. Ann. art. 36.09 (West 2007). Nonetheless, he argues that in this case, it was "incumbent upon trial counsel to request . . . a severance prior to trial in order to protect [appellant's] rights." He asserts that the "facts pertaining to his participation in the offenses . . . differ[ed] from the participation of his [codefendant] and, therefore, [a]ppellant was prejudiced by the trial [c]ourt hearing evidence regarding the [codefendant's] participation and subsequently deciding [a]ppellant's punishment."[5]

---

[5]This contention appears in the argument-summary portion of appellant's brief. In the argument itself, appellant asserts that his participation in the offenses differed from others' participation, and he highlights his own testimony about how Burns was the "main party" in the crimes. We note, however, that appellant's punishment was considered jointly with Chadwick's punishment, not Burns's punishment, which had been already determined. Appellant's argument does not establish that Chadwick had a significantly greater or different role in

7

Appellant's trial counsel's reason for not objecting to the joint hearing does not appear in the record.[6] The record does not show that Chadwick had any prior admissible convictions[7] or that Chadwick's strategy was antagonistic to appellant. In fact, both appellant and Chadwick portrayed themselves as followers of another perpetrator, and Chadwick confirmed appellant's testimony that appellant was under the influence of drugs while committing the offense. Thus, we conclude from this record that is silent concerning counsel's trial strategy that we cannot infer ineffective assistance; counsel's failure to object or request a severance was not so outrageous that no competent attorney would have engaged in it. *See Nava*, 415 S.W.3d at 308 ("It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim."); *Menefield*, 363 S.W.3d at 593; *Woods v. State*, 998 S.W.2d 633, 636 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (holding that when the record was silent concerning trial counsel's reasons for not asking for a severance, the appellant could not rebut "the presumption that [counsel's] failure to request a severance was a decision made in the exercise of reasonable professional judgment"); *see also Cruz v. State*, No. 01-11-00150-CR, 2012 WL 1753007, at

the second burglary (the only one of these two incidents that Chadwick participated in) than appellant, nor does the argument particularly demonstrate how joining Chadwick's trial with his own prejudiced him.

[6]Appellant filed a motion for new trial in each case, but in the motion, he did not contend that his trial counsel had provided ineffective assistance.

[7]Chadwick testified that he did not have any criminal history.

*4 (Tex. App.—Houston [1st Dist.] May 17, 2012, no pet.) (mem. op., not designated for publication) ("Because the record does not offer an explanation for [failing to seek a severance], we presume that trial counsel made all significant decisions in the exercise of reasonable professional judgment."). We hold that appellant cannot meet his burden to establish ineffective assistance of his trial counsel for not requesting a severance, and we overrule his first point. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Nava*, 415 S.W.3d at 307.

In his second point, appellant contends that his trial counsel was ineffective for failing to inquire further about the trial judge's association with a complaining witness after the judge first disclosed the association. After appellant had pled guilty to these four offenses, toward the beginning of the hearing on his punishment, the following exchange occurred:

> THE COURT: And as to both attorneys, the Court has also communicated with all parties, I believe it was yesterday, by e-mail, or maybe the day before, that the Court had received information that one of the injured parties who -- in a burglary, who would be testifying today, was someone who was known to this Court, to the Judge personally, from church. Not known well or a person with whom the Court has -- this Judge has socialized, but I do know this person from church. And both [defendants' attorneys] are aware of that fact and have decided to proceed with that fact known and understood.

> [CHADWICK'S COUNSEL]: That is correct.

> [DEFENSE COUNSEL]: Yes, Your Honor.

> THE COURT: And the Court will not be taking any personal association or knowledge of a person involved in this case into account to either increase or decrease the sentence[; the association] will not have an impact on this Court's decision.

Appellant contends on appeal that "despite the [trial court's] assurances, it [was] incumbent upon trial counsel to inquire further into this matter given the relationship that a complaining [witness's] testimony can bear on the punishment assessed." He argues that at the "very least, counsel should have called the complainant as a witness to inquire of her relationship" with the trial judge.

Trial counsel has not been given an opportunity to explain his reasoning for proceeding with the trial without further clarification of the association between the judge and the complaining witness. We conclude that competent counsel could have reasonably credited and relied on the trial judge's representations that her association with the complaining witness was limited and that her sentencing decision would not be impacted by the association. Because we conclude that counsel's unexplained decision to not inquire further about the association was not so outrageous that no competent attorney would have made the same decision, we must conclude that appellant cannot meet his burden to establish ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Nava*, 415 S.W.3d at 307; *Menefield*, 363 S.W.3d at 593; *see also Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003) (holding that an appellant could not succeed on a claim of ineffective assistance of counsel when the trial record did not disclose counsel's reasons for not filing a motion to recuse after a judge made comments that may have demonstrated the judge's bias); *Diaz v. State*, 380 S.W.3d 309, 312 (Tex. App.—Fort Worth 2012, pet. ref'd) ("A record that is silent as to defense counsel's trial strategy and provides

10

no explanation of counsel's actions generally will not overcome the strong presumption of reasonable assistance.").  We overrule appellant's second point.[8]

## Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgments.

/s/ Charles Bleil

CHARLES BLEIL
JUSTICE

PANEL:  GARDNER and SUDDERTH, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 30, 2015

---

[8]Concerning both points, because we hold that the record is insufficient to establish that appellant's trial counsel provided deficient representation, we need not examine whether counsel's representation prejudiced appellant.  *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."), *cert. denied*, 537 U.S. 1195 (2003).